**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO**

Civil Action No. 1:24-cv-02576-GPG-TPO

JANE ROE,

    Plaintiff,

v.

UNIVERSITY OF COLORADO BOULDER; THE BOARD OF REGENTS FOR UNIVERSITY OF COLORADO, BOULDER;
JUSTIN SCHWARTZ, individually and as agent for University of Colorado, Boulder;
KATE BAUER, individually and as agent for University of Colorado, Boulder;
LANCE CARL, individually and as agent for University of Colorado, Boulder;
EMILY PFLEGHAAR, individually and as agent for University of Colorado, Boulder;
ANN GUSHURST, individually and as agent for University of Colorado, Boulder;
VALERIE SIMONS, individually and as agent for University of Colorado, Boulder;
LLEN POMEROY, individually and as agent for University of Colorado, Boulder;
REGINA TIRELLA, individually and as agent for University of Colorado, Boulder;
DANIEL EASTON, individually and as agent for University of Colorado, Boulder;
HOLLY NELSON, individually and as agent for University of Colorado, Boulder;
LISA POTOKA JONES, individually and as agent for University of Colorado, Boulder;
WILL DEWESE, individually and as agent for University of Colorado, Boulder; and
LAURA EMMOT, individually and as agent for University of Colorado, Boulder,
    Defendants.

---

**DEFENDANT UNIVERSITY OF COLORADO'S MOTION TO DISMISS ECF #7, PLAINTIFF'S FIRST AMENDED COMPLAINT, PER F.R.C.P. 12(B)(1) AND 12(B)(6)**

---

Plaintiff's lawsuit must be dismissed. It was filed too late, and even if it wasn't, it just claims that the University's investigation of her domestic violence case reached the wrong result because, in her view, the University was trying to protect CU football players. (*See* ECF #7, ¶¶ 43, 55, 60, 61, 106, 131, 210.) At most, she alleges that the University was motivated in its investigation and discipline of Plaintiff *by Doe's status as a football player*—not by any characteristic of Plaintiff, such as her sex or race. And the University is immune from her state contract and promissory estoppel claims.

Accordingly, Defendants the Board of Regents of the University of Colorado, the University of Colorado Boulder, Chancellor Justin Schwartz, Kate Bauer, Lance Carl, Emily Pfleghaar, Ann Gushurst, Valerie Simons, Llen Pomeroy, Regina Tirella, Daniel Easton, Holly Nelson, Lisa Potoka Jones, Will Dewese, and Laura Emmot in their official capacities[1] (the "University Defendants") move to dismiss Plaintiff's Amended Complaint (ECF #7) for failure to state a claim under Fed. R. Civ. P. 12(b)(6).[2]

## MOTION TO DISMISS

A motion to dismiss under Fed. R. Civ. P. 12(b)(6) "tests the sufficiency of the allegations within the four corners of the complaint after taking those allegations as true." *Mobley v. McCormick*, 40 F.3d 337, 340 (10th Cir. 1994). To withstand such a motion, a complaint must contain enough allegations of fact to nudge the plaintiff's claims across the line from conceivable to plausible. *Khalik v. United Air Lines*, 671 F.3d 1188, 1190 (10th Cir. 2012). "[M]ere 'labels and conclusions' and 'a formulaic recitation of the elements of a cause of action' will not suffice." *Id.* at 1191 (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)).

A motion to dismiss under Fed. R. Civ. P. 12(b)(1) asserts that the court lacks subject-matter jurisdiction to hear the dispute in the first place. A challenge to the complaint based on the University's sovereign immunity is assessed under F.R.C.P. 12(b)(1). *Dermansky v. Univ. of Colo.*, 445 F. Supp. 3d 1218, 1221 (D. Colo. 2020).

---

[1] This motion does not address any individual-capacity claims.

[2] **Conferral**: Undersigned conferred with counsel for Plaintiff regarding this motion and explained the deficiencies in her complaint. Plaintiff opposes.

# ARGUMENT

Plaintiff brings eight claims against the University. None have merit, and the numerous defendants she's named are confusing and unnecessary. The Court should dismiss them all.

## I. The only appropriate institutional defendants are the Board of Regents and Chancellor Justin Schwartz, in his official capacity.

"An action against a person in [their] official capacity is, in reality, an action against the government entity for whom the person works." *Pietrowski v. Town of Dibble*, 134 F.3d 1006, 1009 (10th Cir. 1998). Thus, each official-capacity suit is simply a suit against the University; there is no need for more than one. Chancellor Schwartz is the appropriate University official to implement any injunctive relief, and the Court should dismiss the twelve redundant official-capacity claims against Bauer, Carl, Pfleghaar, Gushurst, Simons, Pomeroy, Tirella, Easton, Nelson, Potoka Jones, Dewese, and Emmot.

## II. The University is immune to Plaintiff's § 1983, declaratory judgment, and state-law claims.

"It is well-established . . . that § 1983 does not abrogate a state's Eleventh Amendment immunity." *Murray v. Colorado*, 149 F. App'x 772, 774 (10th Cir. 2005). The University of Colorado is an arm of the state. *Id.* Hence, the University and Board of Regents are immune to Plaintiff's § 1983 claim against them (Claim III) and it must be dismissed. *See Polaner v. Regents of the Univ. of Colo.*, No. 1:21-CV-01789-SKC, 2022 WL 4482549, at *3 (D. Colo. Sept. 27, 2022) ("Eleventh Amendment bars Plaintiff's [Sec. 1983] claims against the Board of Regents.").

In Claims I and II, Plaintiff seeks a "declaratory judgment" that the University violated her constitutional right to due process under both the federal and state

3

constitutions. But here, too, the University is immune. While Plaintiff may bring a claim under § 1983 against Chancellor Schwartz in his official capacity, she can only recover prospective injunctive relief. *Buchheit v. Green*, 705 F.3d 1157, 1159 (10th Cir. 2012). Thus, the declaration Plaintiff seeks is barred because Eleventh Amendment "immunity applies to preclude a plaintiff from seeking a declaration that a state officer has violated federal rights in the past." *Jemaneh v. Univ. of Wyoming*, 82 F. Supp. 3d 1281, 1302–03 (D. Colo.), *aff'd*, 622 F. App'x 765 (10th Cir. 2015). In any event, as discussed below, Plaintiff hasn't alleged that the University violated her due process rights and no declaration should enter for that substantive reason too.

Finally, the University is immune to Plaintiff's claim for breach of contract, breach of the implied covenant of good faith, and promissory estoppel. *Norris v. Univ. of Colo., Boulder*, 362 F. Supp. 3d 1001, 1021 (D. Colo. 2019). Contrary to Plaintiff's "upon information and belief" allegation (ECF #7, ¶ 37), the University has not waived its immunity nor has it consented to be sued. Thus, Claims IV, VII, and VIII must too be dismissed.

### III. Plaintiff's § 1983, Title IX, and Title VI claims are time-barred.

"[I]t is appropriate to resolve a statute of limitations defense on a Rule 12(b)(6) motion when the dates given in the complaint make clear that the right sued upon has been extinguished." *Wei v. Univ. of Wyoming Coll. of Health Sch. Pharmacy*, 759 F. App'x 735, 740 (10th Cir. 2019). In Colorado, the statute of limitations for § 1983, Title IX, and Title VI actions is two years from the time the cause of action accrued. *Varnell v. Dora Consol. Sch. Dist.*, 756 F.3d 1208, 1213 (10th Cir. 2014); *Ghareeb v. Bd. of Trustees at Univ. of N. Colo.*, No. 1:19-CV-00228-STV, 2020 WL 136647, at *4 (D. Colo. Jan. 13, 2020); *Kinoff v. Colo. Sch. of Mines Bd. of Trustees*, No. 21-CV-02657-

4

RMR-KLM, 2023 WL 11898803, at *3 (D. Colo. Feb. 9, 2023), *report & rec. adopted*, No. 1:21-CV-02657-RMR-KLM, 2023 WL 11898798 (D. Colo. Mar. 16, 2023).

The claims accrued when Plaintiff knew or should have known that her rights had been violated. *Nicholas v. Boyd*, 317 F. App'x 773, 778 (10th Cir. 2009) (§ 1983 accrual); *Varnell*, 756 F.3d at 121 (Title IX accrual); *Baker v. Bd. of Regents of State of Kan.*, 991 F.2d 628, 632 (10th Cir. 1993) (Title VI accrual). A plaintiff "need not have conclusive evidence of the cause of an injury in order to trigger the statute of limitations." *Alexander v. Okla.*, 382 F.3d 1206, 1216 (10th Cir. 2004). Rather, it's when "the plaintiff can file suit and obtain relief." *Varnell*, 756 F.3d at 121. The test is an objective one, with the focus "on whether the plaintiff knew of facts that would put a reasonable person on notice that wrongful conduct caused the harm." *Nicholas*, 317 F. App'x at 778.

Plaintiff's § 1983 claim asserts that the University violated her right to procedural due process when it investigated the allegation that she wounded Doe. (ECF #7, ¶¶ 149; 19, 66.) Her Title IX claim asserts that the process was tainted due to bias because of Plaintiff's sex. (*Id.*, ¶¶ 207-208.) Her Title VI claim is premised on the University's decision to initiate a formal complaint and expel her, allegedly due to racial bias. (*Id.*, ¶¶ 233-236.) All arise from the common injury of the University's investigation and sanction. Plaintiff filed her Complaint on September 19, 2024, 2024. (ECF #2, #3.) Because her claims accrued <u>before</u> September 19, 2022, they are untimely.

Plaintiff received the Formal Complaint and the Notice of Investigation on February 9, 2022. (ECF #7, ¶¶ 100-101.) She received an investigative report, with the investigative file, on April 12 and again on April 28, 2022. (*Id.*, ¶¶ 110-111.) She

5

appeared at the hearing on June 17, 2022. (*Id.*, ¶¶ 114-115.) She received the determination and sanction of expulsion on August 4, 2022. (*Id.*, ¶ 128.) By August 24, 2022, she'd appealed. (*Id.*, ¶ 129.)

Thus, by August 2022, Plaintiff had experienced the University's entire investigative process and had received the sanction. She knew that she'd been put through a formal grievance process; that the University had allegedly not collected the entire police file; that the Hearing Officer had disregarded alleged exculpatory evidence; that certain hearing witnesses had not appeared and that certain questions were not asked; and that she had received a sanction that she believed was disproportionate. (*Id.*, ¶¶ 19, 100-102; 104; 117; 119-128.) Nothing more is needed for her to have brought these claims. *See Kinoff*, 2023 WL 11898803, at *4 (dismissing § 1983 and Title IX claims as time-barred when plaintiff "knew or should have known of a claim against Mines and its employees . . . but chose to do nothing"); *Khalsa v. Colo. Mountain Coll.*, No. 22-CV-01613-MEH, 2022 WL 17039231, at *5 (D. Colo. Nov. 17, 2022) (dismissing Title VI claim as time-barred, because statute of limitations began to run on the date that "[p]laintiff filed an internal grievance . . . [because a]t that point, Plaintiff clearly believed [the] conduct was harmful").

Plaintiff's internal appeal does not extend the limitations period. *See Siblerud v. Colo. State Bd. of Agric.* 896 F. Supp. 1506, 1510-11 (D. Colo. 1995) (in university discipline case, plaintiff's receipt of "clear and absolute" letter expelling him was date cause of action accrued even though he later appealed through CSU's "established grievance procedures").

Accordingly, the statute of limitations began running in August 2022 and expired in August 2024, one month before she filed her complaint. Plaintiff's § 1983, Title XI, and Title VI claims are untimely and must be dismissed.

## IV. Plaintiff has failed to state a § 1983 due process claim.

Plaintiff only may bring a claim under § 1983 against Chancellor Schwartz in his official capacity, and only for prospective injunctive relief. To assert such a claim, Plaintiff must have adequately alleged that the University deprived her of a protected interest without constitutionally sufficient procedures. *Messeri*, 480 F. Supp. 3d at 1163. She hasn't.

### A. Plaintiff has not alleged a protected interest.

Plaintiff frames her right as a "protected liberty interest in her public education." (See ECF #7, ¶¶ 170, 173.) Plaintiff has no such right. Moreover, to establish such a right or its violation, Plaintiff must allege that the University published defamatory statements about Plaintiff, which resulted in her loss of legal status. *Caldwell v. Univ. of N.M. Bd. of Regents*, 679 F. Supp. 3d 1087, 1157 (D.N.M. 2023). Plaintiff does not allege that the University made or published any defamatory statements about her, nor does she allege that it was defamatory statements—as opposed to the finding she violated University policy—that resulted in her expulsion. At most, she makes the conclusory statement that the expulsion and finding of responsibility "damages and continues to damage" her reputation. (ECF #7, ¶ 148.b-c.) But "harm to one's reputation and humiliation are not sufficient to show that a plaintiff was deprived of a liberty or property interest." *Johnson v. W. State Colo. Univ.*, 71 F. Supp. 3d 1217, 1227 (D. Colo. 2014).

7

Plaintiff also has inadequately alleged a protected property interest in her continued enrollment. She cites to the United States Constitution and claims that its "due process clauses" "are implicated by higher education disciplinary decisions." (ECF #7, ¶ 146.) This is not enough.

### B. Even assuming Plaintiff adequately alleged a protected interest in her education, she still doesn't have a claim, because the procedural protections provided were more than adequate.

"Due process is flexible and calls for such procedural protections as the particular situation demands." *Mathews v. Eldridge*, 424 U.S. 319, 334 (1976). In the University disciplinary context in this Circuit, students generally must be afforded "a hearing before a neutral arbitrator" and be provided the identity of witnesses against them. *Messeri*, 480 F. Supp. 3d at 1164, 1169. When witness credibility is at issue, there must also generally be an opportunity to conduct live cross-examination (though not by the student themselves). *Id.* at 1164.

Here, Plaintiff received just such a process, including an investigation (in which she declined to participate); a live hearing; and an appeal. (*See, e.g.*, ECF #7, ¶¶ 7, 18.) Her specific allegations do not allege a due process violation:

Plaintiff complains first that the University did not provide a fair, unbiased hearing. (ECF #7, ¶¶ 149.a-c; 149.m.) "Administrative decisionmakers are presumed to be impartial, and only evidence of actual bias or a likelihood of bias can support a due process claim." *Park v. Temple Univ.*, 757 F. App'x 102, 106 (3d Cir. 2018). Plaintiff includes no allegations about why the hearing was biased against her, which she must do in order to raise an inference of bias. *See Doe v. Purdue Univ.*, 928 F.3d 652, 664 (7th Cir. 2019) ("To rebut the presumption that university administrators are honest and impartial, a plaintiff must lay a specific foundation of prejudice or prejudgment, such that

8

the probability of actual bias is too high to be constitutionally tolerable."). Indeed, she admits that the University's process was conducted by a "trained official who do not have a conflict of interest or bias." (*Id.*, ¶ 77.) She admits that she attended the hearing with her advisor, and that the University would have provided one for her. (*Id.*, ¶¶ 85, 88, 115.) At most, she contends that because Doe did not appear and because a lawyer from the office of University Counsel appeared with the OIEC investigator, the hearing wasn't fair. (*Id.*, ¶¶ 149.e; 115, 118.) But she does not identify any questions that she would have asked the OIEC investigator which were precluded. Her vague assertion that University Counsel "stifled" some questioning does not state a claim. *See Doe v. Mich. State Univ.*, 989 F.3d 418, 427 (6th Cir. 2021) ("The issue is . . . whether permitting the complainants to refuse to answer some small number of questions throughout the course of a three-day hearing is a violation of Doe's due process rights. It is not.").

Her allegations about Doe suffer a similar deficiency. The University provided Plaintiff the opportunity to cross-examine him, but he did not appear. (ECF #7, ¶ 115.) She does not allege how cross-examining him would have made a difference: the material facts are not disputed. Both Plaintiff and Doe agree they were arguing; agree that Plaintiff picked up a knife during that argument; and agree that Doe was wounded with the knife. (*Id.*, ¶¶ 45-47.) Plaintiff's allegation that Doe was improperly motivated to report to protect a future football career is a red herring. Why Doe may have reported has no bearing on the incident itself, which again, is largely uncontested. At bottom, Plaintiff's bare assertion that the University's process was unfair is not enough to state a violation of her procedural due process rights.

9

<u>Plaintiff next complains that the University investigators did not collect the entire police file and that they relied on a "previous situation from March 2021."</u> (ECF #7, ¶149.d, k.) Plaintiff herself could have collected and provided this police file (and eventually did for her appeal, *see id.*, ¶ 131); yet chose not to participate. And she includes no details about the "March 2021 situation" or how its inclusion prejudiced her.

<u>Plaintiff next spends significant portions of the complaint simply reciting University policy</u>. (*Id.*, ¶¶ 68-97.) To the extent that she is trying to allege a failure to follow policy (and it's not clear that she is), "a university's failure to follow its established guidelines in overseeing a grievance does not in and of itself implicate constitutional due process concerns." *Tonkovich v. Kansas Bd. of Regents*, 159 F.3d 504, 522 (10th Cir. 1998) ("The federal courts, and not the University of Kansas, are responsible for establishing the contours of the Due Process Clause . . . ."); *Brown v. Univ. of Kansas*, 599 F. App'x 833, 838 (10th Cir. 2015) ("[T]he Due Process Clause ... does not require the University to follow any specific set of detailed procedures as long as the procedures the University actually follows are basically fair ones.").

<u>Plaintiff next complains about the appeal</u>. (ECF #7, ¶¶ 135-141.) Like the allegations above, Plaintiff does not contend that the Appeal board violated her due process rights when it appears that, instead, she just disagrees with their decision. She admits that she received an appeal; and also admits that the three appeal board members were entirely different from the investigators, the hearing officer, and the sanctioning board. (*Id.*, ¶ 135.) *See Brown v. Univ. of Kansas*, 599 F. App'x 833, 838 (10th Cir. 2015) ("[T]here is no evidence of a link between the dean's alleged bias and

10

the decision to expel [plaintiff]. The connection is particularly attenuated because a separate body" made the decision.).

Plaintiff also disagrees with the imposition of the sanction itself. "Expulsion is a significant academic punishment, but the penalty is within the power of the disciplinary board once it finds violations." *Nelson v. N. Mich. Univ.*, 366 F. Supp. 3d 964, 971–72 (W.D. Mich. 2018) (rejecting due process challenge to expulsion when "[t]here is nothing pleaded or of record that suggests that expulsion was inappropriate for someone found to be in violation of school rules.")

Finally, Plaintiff's remaining contentions are not due process violations, but just relay her disagreement with the result. But "[d]issatisfaction with adverse academic or disciplinary decisions does not give rise to a legally cognizable harm." *Williams v. Penn. State Univ.*, 697 F. Supp. 3d 297, 308 (M.D. Pa. 2023); *see also Messeri*, 480 F. Supp. 3d at 1168 n.9 ("the wrong result does not mean an individual's due process rights were violated because due process does not require that any particular result from university disciplinary proceedings"). That's all Plaintiff's claims here amount to, and they must be dismissed.

### V. Plaintiff fails to state a claim under Title IX.

Title IX of the Education Amendments of 1972 provides that "[n]o person in the United States shall, on the basis of sex, be excluded from participation in, be denied the benefits of, or be subjected to discrimination under any education program or activity receiving Federal financial assistance." 20 U.S.C. § 1681(a). To survive dismissal of her Title IX claim, Plaintiff must allege facts that "raise a plausible inference" that "sex was a motivating factor" in the University's investigation of the stabbing incident and

11

disciplinary decision to expel her. *Doe v. Univ. of Denver*, 1 F.4th 822, 830 (10th Cir. 2021) (*citing Purdue Univ.*, 928 F.3d at 667-68). She hasn't.

Plaintiff theorizes that the University violated Title IX because it (1) "selective[ly] enforce[d]" her case because she was expelled while a male student who committed serious assault was not (ECF #7, ¶¶ 205, 207, 210); and (2) came to an "erroneous outcome" because she is innocent of any wrongdoing as the stabbing was an accident (*id.* ¶¶ 205, 208). The problem is that none of the alleged facts underlying these theories give rise to a plausible inference that the University was motivated by her sex.[3]

As to the first theory, the mere fact that a single male student, Carson Lee, was allegedly suspended, rather than expelled, despite committing assault does not show the University was motivated by sex *in Plaintiff's case*. There are zero facts about the University's investigation or process concerning Mr. Lee (only the University's alleged sanction); thus, there can be no inference that the University's handling of Mr. Lee and Plaintiff differed at all, much less differed due to sex. Further, Plaintiff hasn't alleged that she and Mr. Lee were similarly situated such that the different sanction in Plaintiff's case suggests an illicit motive. In fact, Plaintiff's own allegations show the two students were not similarly situated: Plaintiff's case involved dating or domestic violence with a knife

---

[3] The Tenth Circuit has "declined to superimpose" the selective enforcement and erroneous outcome tests "onto Title IX" because they are simply "ways in which a plaintiff might show that sex was a motivating factor." *Univ. of Denver*, 1 F.4th at 830. Instead, as mentioned above, the proper analysis is: Does Plaintiff allege facts plausibly showing that the University discriminated against Plaintiff based on her sex? *Id.*

12

(ECF #7, ¶¶ 3, 65, 99, 231) while Mr. Lee's case involved non-domestic violence without a knife or other weapon against a male stranger (*id.* ¶ 210 & n.12). *See Doe v. Samford Univ.*, 29 F.4th 675, 693 (11th Cir. 2022) (affirming Rule 12(b)(6) dismissal of Title IX claim where student failed to allege "'an inconsistency' between his treatment by the university and the university's treatment of a similarly situated member of the other sex"). Finally, other than the conclusory allegation that "male students at CU Boulder" committing assault have "suffered only minor sanctions" (ECF #7, ¶ 210), there are no facts suggesting a sex-biased enforcement scheme, such as allegations describing other female students and other male students engaged in domestic violence, and allegations that the female students were sanctioned more harshly.

As to the second theory, even assuming the University erroneously found that Plaintiff intentionally stabbed Doe, this at most suggests a flawed process, not that the finding was motivated by Plaintiff's sex. *See French v. Denver Pub. Sch.*, No. 23-CV-01614-NYW-MDB, 2024 WL 3276159, at \*16-\*17 (D. Colo. July 2, 2024) (dismissing Title IX claim; although plaintiff alleged "a clearly irregular investigative and adjudicative [Title IX] process," he failed to allege "any circumstances to suggest that this bias was sex-based"). The Court must dismiss Plaintiff's Title IX claim.

## VI.   Plaintiff fails to state a claim under Title VI.

Title VI prohibits discrimination based on race, color, or national origin in programs that receive federal funding. 42 U.S.C. § 2000d. To state a prima facie case of Title VI discrimination, Plaintiff must allege that (1) she is a member of a protected class; (2) she suffered an adverse action; and (3) similarly situated comparators were treated differently. *Jemaneh*, 82 F. Supp. 3d at 1297. To survive dismissal, Plaintiff must

13

plausibly allege that any discrimination was intentional. *Id.* at 1298 (citing *Alexander v. Sandoval*, 532 U.S. 275, 281 (2001)). Once again, Plaintiff fails to state a claim.

Plaintiff hasn't plausibly alleged that any similarly situated students of a different race were treated differently than her. She points to "white male" Mr. Lee, claiming that he was suspended rather than expelled like her (ECF #7, ¶ 227), but as discussed above, Plaintiff and Mr. Lee were not similarly situated. *See supra* p. 13. She also alleges that "similarly situated white students at CU Boulder do not receive the harsh and unnecessary sanction of expulsion"; however, this conclusory statement is insufficient to state a Title VI claim. *See Pourya Shahmaleki v. Kansas State Univ.*, No. 15-7766-JAR, 2016 WL 3522040, at *3 (D. Kan. June 28, 2016) (dismissing Title VI claim where plaintiff alleged that similarly situated "American Caucasian students with [similar] academic issues" to plaintiff were resolved under a different policy; there were no allegations indicating such students "were subject to similar standards of discipline, supervised by common professors or academic departments, or faced [similar] charges"); *Buhendwa v. Reg'l Transp. Dist.*, No. 12-CV-01711-PAB-CBS, 2013 WL 1222307, at *6 (D. Colo. Mar. 22, 2013), *aff'd*, 553 F. App'x 768 (10th Cir. 2014) (dismissing Title VI claim where plaintiff failed to alleged comparators; although plaintiff alleged that RTD compensated white individuals for their injuries but not plaintiff, white individuals were pedestrians or motorists "struck by RTD buses" whereas plaintiff sustained her injuries "when she fell inside a moving bus").

To be sure, Plaintiff has pointed to an alleged University statistical report, claiming that it shows that "similarly situated cases concerning allegations of dating or domestic violence" are rarely addressed through the formal grievance process applied

14

to Plaintiff's case, and rarely result in expulsion. (ECF #7, ¶¶ 98, 99, 231, 232.) She admits the report contains no information on the allegedly similarly situated students' races, claiming that she needs discovery to learn these facts. (*Id.* ¶ 232 n.14.)

This is not enough to survive dismissal. Again, Plaintiff doesn't allege specific facts showing these other student cases were similar to Plaintiff's (for example, facts showing they involved similar weapons and injuries, or similar criminal charges, as Plaintiff's case); she simply declares them to be similar because they broadly concern "allegations of dating or domestic violence." (*Id.* ¶ 98.) Because Plaintiff hasn't plausibly alleged the cases are similar, any future information on the students' races is inconsequential. Moreover, even assuming the cases are similar and discovery shows that formal grievance processes or harsher sanctions occurred more often in cases involving black students like Plaintiff, this at most would state a disparate impact claim. Without allegations suggesting that the disparate impact occurred because of <u>intentional</u> race-based discrimination—such as allegations that a relevant University employee "refer[red] to, or comment[ed]" on her race, which are absent here—such claim is not actionable under Title VI. *Jemaneh*, 82 F. Supp. 3d at 1298 (dismissing Title VI claim where there were "insufficient specific, nonconclusory factual allegations to support the inference that Plaintiff's grades were the product of intentional discrimination" against him as an Ethiopian American).

Thus, Plaintiff hasn't stated a prima facie case of discrimination, much less that any such discrimination was intentional as is required to state a Title VI claim. Consequently, the Court must dismiss Claim VI.

The University respectfully requests that the Court dismiss all eight claims.

15

**DATED:** December 16, 2024.

                Respectfully submitted:

                *s/ Megan H. Clark*
                Megan H. Clark
                Senior Assistant University Counsel
                Special Assistant Attorney General
                University of Colorado
                Office of University Counsel
                1800 Grant Street, Suite 700
                Denver, CO 80203
                303-860-5691
                Megan.Clark@cu.edu
                *Attorney for Defendant*

Case No. 1:24-cv-02576-GPG-TPO   Document 58   filed 12/16/24   USDC Colorado
pg 16 of 17

## **CERTIFICATE OF SERVICE**

I hereby certify that on December 16, 2024, I electronically filed the foregoing with the Court's electronic filing system (CM/ECF) which will automatically cause notification to be sent to the following counsel of record:

Jason William Savela
The Savela Law Firm PC
3825 Iris Avenue, Suite 100
Boulder, CO 80301
720-821-1001
jason@savelaw.net
*Attorney for Plaintiff*

*s/ Elisha Garza*
Elisha Garza, Litigation Paralegal

17