**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLORADO**

Civil Action No. 1:24-cv-02576-GPG-TPO

LOULILLIAN WATSON,

Plaintiff,

v.

UNIVERSITY OF COLORADO BOULDER; et. al.,

Defendants.

---

# DEFENDANT UNIVERSITY OF COLORADO'S REPLY IN SUPPORT OF ITS MOTION TO DISMISS ECF #81, PLAINTIFF'S SECOND AMENDED COMPLAINT

---

Plaintiff's, Loulillian Watson's, Response (ECF #86) to the University's Motion to Dismiss (ECF #82) reveals her deep confusion about the law, and serves to confirm that her Second Amended Complaint (ECF #81), against the University and all official-capacity Defendants, must be dismissed.

## I. Ms. Watson misunderstands the University's immunity. (ECF #86, pp. 8-10.)

### A. Ms. Watson cannot maintain a § 1983 claim against the Board of Regents or the University.

Plaintiff asserts that she can seek "prospective injunctive relief" against the University under the *Ex Parte Young* exception. ECF #86, p. 9. Incorrect: Plaintiff may seek prospective injunctive relief against Chancellor Schwartz in his official capacity.

The University is an arm of the state and is not a "person" capable of suit under § 1983. *Will v. Mich. Dep't of State Police*, 491 U.S. 58, 71 (1989). A narrow exception is available under *Ex Parte Young*: Plaintiff may bring a § 1983 claim against an official-capacity defendant—here, the current Chancellor—for prospective relief only. *Id.* at n. 10; *see also Kentucky v. Graham*, 473 U.S. 159, 165 (1985). Consequently, Plaintiff's

Section 1983 claim (Claim III) must be dismissed as against the University and the Board of Regents.

### B. Ms. Watson cannot obtain the "declaratory judgment" she seeks.

Plaintiff tries to save her declaratory judgment claims by contending that she seeks "to have her record expunged," which is prospective injunctive relief. ECF #86, p. 9, n.10. But this is a remedy for her § 1983 claim – it's not a "declaratory judgment" that her rights were violated. Accordingly, Claims I and II must be dismissed.

### C. Ms. Watson cannot bring state law claims against the University, an arm of the State, in federal court.

Plaintiff misunderstands the nature of the University's immunity on her state law claims. ECF #86, p. 10. It's not the Colorado Governmental Immunity Act ("CGIA") that applies here to bar Claims VI, VII, and VIII – it's the Eleventh Amendment. *Norris v. Univ. of Colo., Boulder*, 362 F. Supp. 3d 1001, 1021 (D. Colo. 2019).

## II. Ms. Watson's § 1983, Title IX, and Title VI claims are time-barred.

Plaintiff agrees that a two-year statute of limitations applies to her claims, but contends that her claims did not accrue—and the statute of limitations did not begin to run—until October 19, 2022, the date the University denied her appeal. ECF #86, pp. 11-12. As she puts it, while "the injury triggering these claims is [the August 4, 2022] finding of responsibility and expulsion, the real injury occurred when [Plaintiff] learned that she had absolutely no future at CU Boulder – i.e., when her appeal was denied." *Id.* at 11. In short, Plaintiff pins her accrual on the consequences of the injury – her permanent expulsion – and not the injury itself. That's directly contrary to the law.

In the Tenth Circuit, "claims accrue and the statute of limitations begins to run when the plaintiff knows or has reason to know of the existence and cause of the injury which is the basis of his action." *Alexander v. Oklahoma*, 382 F.3d 1206, 1215 (10th Cir.

2004). Indeed, the Supreme Court has instructed that the focus is on the date of the discriminatory act, not the date when the effects of the act are felt. *Delaware State College v. Ricks*, 449 U.S. 250, 258 (1980).

In *Delaware State College v. Ricks*, a professor was notified on June 26, 1974, that he was denied tenure. 449 U.S. at 253. He grieved the decision to the college's Board of Trustees, which rejected his appeal on September 12, 1974. *Id*. He filed suit, but he was too late: his claim accrued not on September 12 with the denial of his appeal, but on June 26. *Id*. at 262. The Supreme Court explained:

> [W]e think that the Board of Trustees had made clear well before September 12 that it had formally rejected Ricks' tenure bid. The June 26 letter itself characterized that as the Board's "official position." It is apparent, of course, that the Board in the June 26 letter indicated a willingness to changes its prior decision if Ricks' grievance were found to be meritorious. But entertaining a grievance complaining of the tenure decision does not suggest that the earlier decision was in any respect tentative. The grievance procedure, by its nature, is a *remedy* for a prior decision, not an opportunity to *influence* that decision before it is made.

*Id*. at 261. So, too, here. By August 2022, Plaintiff had experienced the investigative process, received the sanction, and believed the process was unfair and the sanction disproportionate. ECF #81, ¶¶ 19, 100-102; 104; 117; 119-128. Nothing more is needed for her to have brought these claims. Thus, they accrued in August 2022 and are time-barred. ECF #82, pp. 4-7.[1]

Plaintiff's cases urging a contrary accrual timeline are unavailing. She first cites *J. Endres v. Northeast Ohio Medical University*. There, a medical student was found

---

[1] Plaintiff correctly notes that in *Khalsa v. Colo. Mountain Coll*., No. 22-CV-01613-MEH, 2022 WL 17039231, at *5 (D. Colo. Nov. 17, 2022), the Court gave plaintiff "the benefit of the later grievance decision date." Nonetheless, the Court acknowledged that when Plaintiff filed an internal grievance, "[a]t that point, Plaintiff clearly believed [the] conduct was harmful."

responsible for academic misconduct (cheating) and the Sixth Circuit concluded that the statute of limitations did not begin to run until "the second . . . panel issued a final, non-appealable decision recommending his dismissal." 938 F.3d 281, 296 (6th Cir. 2019). But *Endres* is not persuasive: first, it is not controlling precedent in this circuit, and second, it is distinguishable. In *Endres*, the university held a hearing after which it found plaintiff responsible for misconduct, and issued a decision that he "could: (1) withdraw within four days, in which case his transcript would state he had withdrawn; (2) accept the decision for dismissal, in which case his transcript would state that he had been dismissed; or (3) request an appeal of [the] decision[.]" *Id*. at 289. The plaintiff appealed, because a "key piece of evidence was a statistical analysis" purporting to show a likelihood of cheating, but it had not been provided to him before or during the hearing. *Id*. at 289-90. A committee sent plaintiff's case back for a second hearing. *Id*. at 290. After a second hearing, the panel again found plaintiff responsible for misconduct and "voted to dismiss him." *Id*. at 291. It was at this point, then, that the plaintiff knew he "had no future" at the school. *Id.* at 296.

This is different from Plaintiff here, whose initial decision indicated that she was both responsible and facing expulsion. ECF #81, ¶¶ 119, 128. In short, that the *Endres* plaintiff first received an option to "withdraw," to "accept" dismissal, or to appeal made whether he had a "future" at the school unclear. 938 F.3d at 289. Plaintiff faced no such uncertainty because the decision to expel her was final when it issued, regardless of whether it "went into effect" after an appeal or whether an appeal was available to her. *See Ricks*, 449 U.S. at 261.

Plaintiff next cites *Reid v. James Madison University*, which is also not binding precedent and is similarly distinguishable. 90 F.4th 311 (4th Cir. 2024). There, the plaintiff was found responsible for an inappropriate relationship with a student, but the initial decision explained that "either party could appeal to the 'vice president,' who 'shall make a final decision[.]'" *Id*. at 317. The Fourth Circuit agreed that the initial decision was not final, as it was characterized as "a 'suggested' 'recommendation'"; thus the statute of limitations did not run until the plaintiff's appeal was denied and the university issued a final decision. *Id*. at 323. Again, that's not the case here.

Indeed, other courts have followed the Supreme Court's reasoning in *Ricks* to conclude that for university students facing expulsion after misconduct, the statute of limitations begins to run when the plaintiff knows of their injury – not when the plaintiff has exhausted any appeal process. In *Doe v. Virginia Polytechnic Institute*, the plaintiffs were university students who were expelled after a finding of sexual misconduct, appealed, and their appeals were denied. 400 F. Supp. 3d 479, 485 (W.D. Va. 2019). The district court concluded that the plaintiffs' injuries accrued on the date of the initial disciplinary decision, not the conclusion of any appeal. In so doing, the court expressly rejected the argument that the statute of limitations should be delayed if the university's handbook said that discipline was not imposed until after an appeal decision:

> [That the decision is not final until the appeal is decided] cannot control the accrual inquiry. The question is not whether, on appeal, the decision might be reversed. Of course, as a factual matter, it could . . . . The question is when each plaintiff had notice of the due process violations against him. For the reasons already discussed, each plaintiff had notice of any due process violations in the initial hearing and any injury occurred when plaintiff was notified of the initial decision. Accordingly, . . . the limitations period for plaintiffs' claims began, and the claim accrued, at the time of the initial decision for each of them[.]

*Id.* at 492–93. Indeed, in reaching this conclusion, the district court relied on *Siblerud v. Colorado State Board of Agriculture*, 896 F. Supp. 1506 (D. Colo. 1995), which the University cited in its Motion. ECF #82, p. 6. And *Virginia Polytechnic* isn't an outlier. Other courts have held that a disciplined student's cause of action accrues on the date of the injury – not, as Plaintiff would have it, on the date they learned they "had no future" at the institution. *See Tolliver v. Prairie View A&M*, No. CV H-18-1192, 2018 WL 4701571, at *2 (S.D. Tex. Oct. 1, 2018) (concluding that because plaintiff's "claims were based on events that occurred in June 2015 [when he] . . . knew that he was expelled, the grounds, and the procedure that was followed[, his] request to overturn the expulsion did not delay the accrual of his claims arising from the expulsion"); *Cordova v. Univ. of Notre Dame Du Lac*, 936 F. Supp. 2d 1003, 1011 (N.D. Ind. 2013) (rejecting argument that "the statute of limitations was tolled until . . . the Provost denied [plaintiff's] appeal").

Accordingly, the Court should, in line with *Ricks*, *Siblerud*, and *Virginia Polytechnic*, conclude that the statute of limitations started to run when Plaintiff received the finding of responsibility and sanction: August 4, 2022. ECF #81, ¶¶ 119-128. Thus, her § 1983, Title IX, and Title VI claims are untimely and must be dismissed.

## III. Even if timely, Ms. Watson has failed to state a § 1983 due process claim.

### A. The lone "official capacity" defendant should be Chancellor Justin Schwartz.

The Court should dismiss the twelve extra University employees named in their official capacities. ECF #86, p. 10. In essence, Plaintiff has listed the University thirteen times, which is confusing and redundant. Moreover, there is no change in relief by naming multiple "official capacity" defendants. *Sims v. Unified Gov't of Wyandotte Cnty./Kansas City*, 120 F. Supp. 2d 938, 944 (D. Kan. 2000) ("[N]aming [multiple

employees] as defendants in their official capacities can afford plaintiff no additional relief because there is no distinction between these defendants in their official capacity and the . . . Government.”).

**B. Ms. Watson has not alleged constitutionally inadequate procedures.**

Plaintiff raises two ways the University allegedly denied her due process: (1) she could not cross-examine any witnesses because “none” of the witnesses appeared at the hearing; and (2) the hearing officer was biased. Neither state a claim.

First, assuming the University was required to provide not only the opportunity to cross examine but also a mechanism to enforce witness attendance (and it wasn’t), it wouldn’t matter because the underlying matter does not turn on credibility. True, Plaintiff *claims* that her “case turns almost entirely on witness credibility.” ECF #86, p. 6. But Plaintiff admits that she and John Doe argued, during which she picked up a knife and John Doe was stabbed. He required emergency surgery and Plaintiff was criminally charged. ECF #81, ¶¶ 3, 47, 63. In these circumstances, cross-examination was not required. *Lee v. Univ. of New Mexico*, 500 F. Supp. 3d 1181, 1241–42 (D.N.M. 2020) (“Cross-examination is unnecessary if a student admits to engaging in misconduct[.]”); *Doe v. Baum*, 903 F.3d 575, 578 (6th Cir. 2018) (“[I]f a public university has to *choose between competing narratives to resolve a case*, the university must” offer cross-examination) (emphasis added). While Plaintiff believes that Doe thought it was an “accident” and only reported to protect his football career, neither refute Plaintiff’s responsibility for the incident in the first place. Thus, even if Plaintiff cross-examined Doe, his testimony would have no bearing about whether the incident happened (Plaintiff admits it did), about whether Plaintiff picked up the knife (Plaintiff admits she did) or about whether Doe was injured (Plaintiff admits he was). In short, cross-

examining Doe was not essential and his nonappearance does not support a due process claim. *See Doe v. Univ. of Nebraska*, 451 F. Supp. 3d 1062, 1123–24 (D. Neb. 2020) (where plaintiff admitted the conduct and other evidence supported finding, there was no due process violation despite that accuser did not participate in the hearing).

Moreover, the University has a robust investigation and hearing process, which Plaintiff received. An investigator collected evidence; interviewed witnesses; and reviewed police reports and hospital records. ECF #81, ¶¶ 50, 51, 104, 106, 107. The investigator summarized the evidence in a Preliminary and then a Final Report. *Id.* ¶¶ 83-84, 110-111. There was a live hearing, at which Plaintiff appeared but declined to participate, and her lawyer made arguments on her behalf. *Id.* ¶¶ 114, 115. Plaintiff does not allege that she was denied this process, but rather, that it didn't come out in her favor, relying on arguments about "mens rea" that are relevant to a criminal context. *E.g., id.*, ¶¶ 123, 126-28; *Lee*, 500 F. Supp. 3d at 1249 (university disciplinary processes do not require criminal standards). Considering the process as a whole, there was no due process violation. *See Univ. of Nebraska*, 451 F. Supp. 3d at 1122 (finding "no evidence to support Plaintiff's claim that the university failed to conduct a thorough and impartial investigation" given, among other things, "the opportunity to respond").

Finally, Plaintiff declined to participate at any stage. ECF #81, ¶¶ 7, 105. Yet, if she thought it important, <u>she</u> was the only person who could have testified about her "mens rea." Moreover, she could have explained the incident was an accident or identified Doe's "provoking actions" – yet Ms. Watson chose not to participate in the investigation, to respond to any written summary, or to testify at the hearing. *Id.*, ¶¶ 7, 105, 109-11, 115. Her decision to not participate not only waives her right to complain

about a denial of due process, it undercuts her claim that her version of events was "disregarded," as she didn't take advantage of the opportunities to provide her version in the first place. *See Rivera v. Bernalillo Cnty.*, 51 F. App'x 828, 832 (10th Cir. 2002) (no procedural due process violation where plaintiff waived opportunity for a hearing by not following procedural requirements); *Cont'l Coal, Inc. v. Cunningham*, 511 F. Supp. 2d 1065, 1081 (D. Kan. 2007) ("A party cannot create a due process claim by ignoring established procedures.").

Second, Plaintiff is incorrect that she "plausibly alleged" that the hearing was biased. ECF #86, p. 6. She claims that because "Defendant Bauer, the Senior Investigator[,]… appear[ed] at the hearing with university counsel," this "suggests Defendant Bauer and the University did not believe the process was conducted by a trained official without a conflict of interest." *Id.* at 7. But the mere involvement of counsel doesn't connect to bias at all. *Messeri v. Univ. of Colorado, Boulder*, No. 18-CV-2658-WJM-SKC, 2019 WL 4597875, at *6–7 (D. Colo. Sept. 23, 2019) (rejecting argument that University counsel's review of equity office decision "affected the fairness and impartiality" because, among other reasons, "there are no plausible allegations that [counsel's] review impacted the outcome"). And even taking as true Plaintiff's allegation that this was a deviation from policy (and the University does not agree that it was), that alone doesn't state a due process violation. *Brown v. Univ. of Kansas*, 599 F. App'x 833, 838 (10th Cir. 2015). Moreover, as previously argued, Plaintiff hasn't identified what questions were "stifled" that would amount to a due process violation. ECF #82, p. 9. Finally, she repeats her allegations that the Hearing Officer and Appeal Board "ignored [her] version of events." ECF #86, p. 7. But again, this does not show "bias." *Messeri v.*

*DiStefano*, 480 F. Supp. 3d 1157, 1172 (D. Colo. 2020) ("Although Plaintiff clearly disagrees with the . . . ultimate credibility determinations, his mere suspicion of bias does not rise above the level of speculation[.]"); *see also Univ. of Nebraska*, 451 F. Supp. 3d at 1124 (showing bias requires plaintiff to "demonstrate that the hearing panel acted with actual bias as a result of personal animosity, illegal prejudice, or personal or financial stake in the outcome").

**IV. Even if not time-barred, Ms. Watson's conclusory allegations are still insufficient to state a claim under Title IX or Title VI.**

Finally, Plaintiff's Response does not meaningfully engage with Defendant's arguments that she hasn't stated a claim under Title IX or Title VI. Instead, she largely repeats the same conclusory statements from her Complaint: she alleges that "procedural deficiencies" combined with "statistical evidence" and a single incident involving a white male are enough to show both gender and racial bias. ECF #86, p. 13 (Title IX claim); *see also Id.* at 15-16 (Title VI claim). But for the reasons already argued, these conclusory allegations are simply not enough. ECF #82, pp. 13-15.

The University respectfully requests that the Court grant its Motion to Dismiss.

**DATED:** May 21, 2025.

Respectfully submitted:

*s/ Megan H. Clark*

Megan H. Clark
Senior Assistant University Counsel
Special Assistant Attorney General
University of Colorado
Office of University Counsel
1800 Grant Street, Suite 700
Denver, CO 80203
303-860-5691
Megan.Clark@cu.edu
*Attorney for Defendant*

**CERTIFICATE OF SERVICE**

I hereby certify that on May 21, 2025, I electronically filed the foregoing with the Court's electronic filing system (CM/ECF) which will automatically cause notification to be sent to the following counsel of record:

Jason William Savela
The Savela Law Firm PC
3825 Iris Avenue, Suite 100
Boulder, CO 80301
720-821-1001
jason@savelaw.net
*Attorney for Plaintiff*

*s/ Pamela K. Morrison*
Pamela K. Morrison, Litigation Paralegal