**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLORADO**

Civil Action No. 1:24-cv-02576-GPG-TPO

LOULILLIAN WATSON,

Plaintiff,

v.

UNIVERSITY OF COLORADO BOULDER; THE BOARD OF REGENTS FOR UNIVERSITY OF COLORADO, BOULDER;
JUSTIN SCHWARTZ, in his official capacity;
KATE BAUER, in her official capacity;
ANN GUSHURST, individually and in her official capacity;
LLEN POMEROY, individually and in her official capacity;
REGINA TIRELLA, individually and in her official capacity,

Defendants.

---

**DEFENDANT UNIVERSITY AND CHANCELLOR SCHWARTZ'S MOTION TO DISMISS ECF #104 PER F.R.C.P. 12(B)(1) AND F.R.C.P. 12(B)(6).**

---

Plaintiff, Loulillian Watson, challenges the disciplinary process that resulted in her expulsion from the University of Colorado Boulder. She alleges that the process and her expulsion violated her constitutional right to due process, Title IX, Title VI, and state law. But her claims are untimely, do not state a claim for relief, and are barred by sovereign immunity. Accordingly, Defendants the Board of Regents of the University of Colorado, the University of Colorado Boulder (collectively, the "University")[1], and Chancellor Justin Schwartz in his official capacity[2] move to dismiss Plaintiff's Third Amended Complaint

[1] These two Defendants are one entity, properly styled as the "University of Colorado Boulder, by and through the Board of Regents of the University of Colorado."
[2] The Third Amended Complaint also names Defendants Kate Bauer, Llen Pomeroy, Ann Gushurst, and Regina Tirella in their official capacities. Plaintiff has agreed to dismiss these redundant official-capacity defendants, and a joint motion to dismiss them has been filed at ECF #105, #106.

(ECF #104) for failure to state a claim under Fed. R. Civ. P. 12(b)(6) and for lack of subject-matter jurisdiction under Fed. R. Civ. P. 12(b)(1).

**Conferral:** Undersigned counsel conferred with counsel for Plaintiff regarding this motion, the legal arguments made herein, and provided legal authority. Plaintiff's counsel agreed to dismiss the redundant official-capacity defendants (*see* ECF #105 and #106), but otherwise disagrees with the inadequacy of the Third Amended Complaint and opposes dismissal.

## BACKGROUND

Plaintiff was an undergraduate student at the University of Colorado Boulder. ECF #104, ¶ 23. In mid-2021, she began dating John Doe, a member of the CU Football team. *Id.*, ¶¶ 22-24. On February 2, 2022, Plaintiff and Doe got into an argument, during which Plaintiff picked up a kitchen knife and stabbed Doe in the side. *Id.*, ¶¶ 26-28. Doe went to the hospital, where he required surgery because the knife had "cut . . . an internal organ"; he stayed in the hospital overnight. *Id.*, ¶¶ 29-34.

Doe told his football coaches that he was in the hospital. *Id.*, ¶¶ 32-33. After his release, his coaches learned that he had been in the hospital recovering from a knife wound inflicted by Plaintiff. *Id.*, ¶ 33. Because this incident implicated the University's prohibition on dating violence, and because CU Football coaching staff are mandatory reporters, one of Doe's coaches reported the incident to the University's Office of Institutional Equity and Compliance ("OIEC"). *Id.*, ¶ 40. The coaches also appropriately encouraged Doe to report the incident to the Boulder police; he did so in a phone call. *Id.*, ¶¶ 37-39.

Boulder police arrested Plaintiff, and she was ultimately charged with First Degree Assault, Felony Menacing, and Obstruction of Telephone Service, all with a domestic violence enhancer; she accepted a deferred sentence. *Id.*, ¶ 47; p. 19, n. 7.

Meanwhile, the OIEC opened an investigation into whether the incident violated University policy. *Id.*, ¶ 82. Plaintiff received a Notice of Allegations, which "informed [her] that she was being investigated for possible violations of CU Boulder's Sexual Misconduct, Intimate Partner Violence, and Stalking Policy, specifically Dating Violence" ("the Policy"). *Id.*, ¶ 83. The OIEC interviewed seven witnesses and reached out to two others, who did not respond. *Id.*, ¶ 88. Plaintiff did not participate in an interview (*id.*, ¶ 87); did not provide "any information or documentation to the OIEC" (*id.*, ¶ 91); and did not provide a response to either the preliminary investigative report or the final investigative report (*id.*, ¶¶ 92-93). On June 17, 2022, the University held a live hearing before a Hearing Officer (Defendant Gushurst). *Id.*, ¶ 102. Plaintiff appeared, represented by an advisor; Doe did not appear, but his advisor did. *Id.*, ¶ 103. Neither party testified, although they could have. *Id*. Afterward, the Hearing Officer concluded in a written determination that Plaintiff violated the Policy. *Id.*, ¶ 107. Plaintiff appealed, which was denied. *Id.*, ¶¶ 132, 138. She was expelled from the University. *Id.*, ¶ 131.

**LEGAL STANDARD**

A motion to dismiss under Fed. R. Civ. P. 12(b)(6) "tests the sufficiency of the allegations within the four corners of the complaint after taking those allegations as true." *Mobley v. McCormick*, 40 F.3d 337, 340 (10th Cir. 1994). To withstand such a motion, a complaint must contain enough allegations of fact to nudge the plaintiff's claims across the line from conceivable to plausible. *Khalik v. United Air Lines*, 671 F.3d

1188, 1190 (10th Cir. 2012). "[M]ere 'labels and conclusions' and 'a formulaic recitation of the elements of a cause of action' will not suffice." *Id.* at 1191 (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)).

A motion to dismiss under Fed. R. Civ. P. 12(b)(1) asserts that the court lacks subject-matter jurisdiction to hear the dispute in the first place. A challenge to the complaint based on the University's sovereign immunity is assessed under F.R.C.P. 12(b)(1). *Dermansky v. Univ. of Colo.*, 445 F. Supp. 3d 1218, 1221 (D. Colo. 2020).

## ARGUMENT

Plaintiff brings six claims: a § 1983 claim against "Individual Defendants,"[3] (Count I, ECF #104, ¶¶ 145-199); a Title IX claim (Count II, *id.*, ¶¶ 200-229); Title VI claim (Count III, *id.*, ¶¶ 230-255); and three state-law claims (Counts IV, V, and VI, *id.*, ¶¶ 256-295). The Court must dismiss all six.

### I. Plaintiff's Section 1983, Title IX, and Title VI claims are untimely and must be dismissed per F.R.C.P. 12(b)(6).

"[I]t is appropriate to resolve a statute of limitations defense on a Rule 12(b)(6) motion when the dates given in the complaint make clear that the right sued upon has been extinguished." *Wei v. Univ. of Wyoming Coll. of Health Sch. Pharmacy*, 759 F. App'x 735, 740 (10th Cir. 2019). In Colorado, the statute of limitations for a § 1983, Title IX, and Title VI action is two years from the time the cause of action accrued. *Varnell v. Dora Consol. Sch. Dist.*, 756 F.3d 1208, 1213 (10th Cir. 2014) (Section 1983 claims borrow the state statute of limitations for personal injury actions); *Ghareeb v. Bd. of*

[3] While Plaintiff's Section 1983 claim is pled against "Individual Defendants," she also appears to assert this Section 1983 claim against Chancellor Schwartz in his official capacity. *See* ECF #104, ¶ 195. Accordingly, the instant motion addresses such claim against Chancellor Schwartz in his official capacity. Defendants Pomeroy, Gushurst, and Tirella have separately moved to dismiss the Section 1983 claim against them.

*Trustees at Univ. of N. Colo.*, No. 1:19-CV-00228-STV, 2020 WL 136647, at *4 (D. Colo. Jan. 13, 2020) (Title VI claim); *Kinoff v. Colo. Sch. of Mines Bd. of Trustees*, No. 21-CV-02657-RMR-KLM, 2023 WL 11898803, at *3 (D. Colo. Feb. 9, 2023), *report & rec. adopted*, No. 1:21-CV-02657-RMR-KLM, 2023 WL 11898798 (D. Colo. Mar. 16, 2023) (Title IX and Section 1983 claims); *see also* C.R.S. § 13-80-102(1)(g)(i) (Colorado two-year statute of limitations).

The claims accrued, and the statute of limitations began to run, when Plaintiff knew or should have known that her rights had been violated. *Nicholas v. Boyd*, 317 F. App'x 773, 778 (10th Cir. 2009) (§ 1983 accrual); *Varnell*, 765 F.3d at 1215-17 (Title IX accrual); *Baker v. Bd. of Regents of State of Kan.*, 991 F.2d 628, 632 (10th Cir. 1993) (Title VI accrual). A plaintiff "need not have conclusive evidence of the cause of an injury in order to trigger the statute of limitations." *Alexander v. Okla.*, 382 F.3d 1206, 1216 (10th Cir. 2004). Rather, claims accrue when "the plaintiff can file suit and obtain relief." *Varnell*, 756 F.3d at 1215 (citation omitted). The test is objective, with the focus "on whether the plaintiff knew of facts that would put a reasonable person on notice that wrongful conduct caused the harm." *Nicholas*, 317 F. App'x at 778.

Plaintiff's § 1983 claim asserts that the University violated her right to due process when it investigated the allegation that she wounded Doe and later expelled her upon finding that she had. ECF #104, ¶¶ 161, 165-68, 190-91. Her Title IX and Title VI claims assert that the process was tainted due to bias because of Plaintiff's race and sex. *Id.*, ¶¶ 215-16, 226, 252. All arise from the common injury of the University's investigation and sanction. The facts of such investigation and sanction were known to Plaintiff no later than August 2022 – thus, her claims accrued then. Yet Plaintiff filed her

initial complaint more than two years later, on September 19, 2024; as such, her claims are untimely. (ECF #2, #3.)

Indeed, on February 9, 2022, Plaintiff received the Notice of Allegations and Interim Suspension, informing her that she was being investigated by OIEC for possible Policy violations. ECF #104, ¶¶ 82-83. The investigation took place between February 14 - March 10, 2022. *Id.*, ¶ 86. Plaintiff received a Preliminary Investigative Report on April 12, 2022, the Final Investigative Report on April 18, 2022, appeared at the hearing on June 17, 2022, and received the written determination and sanction of expulsion on August 4, 2022. *Id.,* ¶¶ 92-93, 102-103, 127. By August 24, 2022, Plaintiff had appealed. *Id.*, ¶ 132.

Accordingly, by August 2022, Plaintiff knew that she'd been put through a formal grievance process; had experienced all parts of that process that she now alleges were unconstitutional and discriminatory; and that she had received a sanction that she believed was disproportionate. *Id.*, ¶¶ 82-83; 86; 92-93; 100-02; 106-07; 127. Nothing more is needed for her to have brought these claims. *See Kinoff*, No. 21-CV-02657-RMR-KLM, 2023 WL 11898803, at *4 (dismissing § 1983 and Title IX claims as time-barred when plaintiff "knew or should have known of a claim against Mines and its employees . . . but chose to do nothing"); *see also Gearhart v. Univ. of Colo., Colo. Springs*, No. 1:24-CV-00976-SKC-MDB, 2025 WL 2439226, at *6 (D. Colo. Aug. 25, 2025) (dismissing Title IX claim as time-barred, including because Plaintiff knew or should have known of her Title IX claim when she had knowledge of conduct she believed violated Title IX); *Ghareeb*, No. 1:19-CV-00228-STV, 2020 WL 136647, at *5

(dismissing portion of Title VI claim as time-barred based on conduct that occurred more than two years prior).

Plaintiff's appeal, which she initiated on August 24, 2022, does not extend the limitations period. ECF #104, ¶ 20, n. 3; *Siblerud v. Colo. State Bd. of Agric.* 896 F. Supp. 1506, 1510-11 (D. Colo. 1995) (in university discipline case, plaintiff's receipt of "clear and absolute" letter expelling him was date cause of action accrued even though he later appealed through CSU's "established grievance procedures"). If anything, her appeal confirms that Plaintiff was aware of the allegedly unconstitutional and discriminatory conduct by this point—because she appealed the sanction on that basis—yet chose not to file a complaint. *Id.*, ¶¶ 132, 136-37; *see Siblerud*, 896 F. Supp. at 1510-11.

Accordingly, Plaintiff had all the information she needed to file a complaint by August 2022 and the statute of limitations expired in August 2024. Because she did not file until September 19, 2024, Plaintiff's Section 1983, Title IX, and Title VI claims are untimely and must be dismissed.

## II. Even if timely, Plaintiff fails to state a § 1983 due process claim.

To assert a § 1983 procedural due process claim against Chancellor Schwartz in his official capacity, Plaintiff must adequately allege that the University deprived her of a protected interest without constitutionally sufficient procedures. *Messeri v. DiStefano*, 480 F. Supp. 3d 1157, 1163 (D. Colo. 2020). She has not so alleged.

### A. Plaintiff has not alleged a protected liberty interest.

First, Plaintiff asserts that she "has a protected liberty interest in her good name, reputation, honor, and integrity" and that she was deprived of it because "the allegations" and her expulsion, including a notation on her transcript, have "lifelong

ramifications." ECF #104, ¶¶ 154, 157, 160. But to establish a liberty interest or its deprivation, Plaintiff must allege that the University published defamatory statements about her that resulted in her loss of legal status. *Caldwell v. Univ. of N.M. Bd. of Regents*, 679 F. Supp. 3d 1087, 1157 (D.N.M. 2023). Plaintiff does not allege that the University made or published any defamatory statements about her, nor does she allege that it was defamatory statements—as opposed to the finding she violated University policy—that resulted in her expulsion. At most, she makes the conclusory statement that the expulsion and "permanent notation on her transcript . . . harmed and continues to harm her good name, reputation, honor, and integrity." ECF #104, ¶ 160. But "harm to one's reputation and humiliation are not sufficient to show that a plaintiff was deprived of a liberty or property interest." *Johnson v. W. State Colo. Univ*., 71 F. Supp. 3d 1217, 1227 (D. Colo. 2014). Accordingly, to the extent that Plaintiff premises her Sec. 1983 claim on a liberty interest, it must be dismissed.

**B. Plaintiff has not stated a claim for a deprivation of a protected property interest.**

"Due process is flexible and calls for such procedural protections as the particular situation demands." *Mathews v. Eldridge*, 424 U.S. 319, 334 (1976). In the University disciplinary context, students generally must be afforded "a hearing before a neutral arbitrator" and be provided the identity of witnesses against them. *Messeri*, 480 F. Supp. 3d at 1164, 1169. When witness credibility is at issue, there must also be an opportunity to conduct live cross-examination. *Id*. at 1164.

Here, Plaintiff received such a process and more, including a notice of the allegations, an investigation and a live hearing—both in which she declined to participate—and an appeal. ECF #104, ¶¶ 82-83, 86-88, 91-96, 100-104,132. Her

specific contentions—that she was denied a meaningful opportunity to be heard and a fair hearing—amount only to a disagreement with the process's outcome. Disagreement with the process simply isn't a due process violation:

Plaintiff complains that the University denied her a meaningful opportunity to be heard. *Id.*, ¶¶ 168, 169-81. She first asserts she was denied such opportunity because defendants placed the burden of proof on her. *Id.* ¶ 169. Even if true, this does not state a due process violation. *See Messeri*, 480 F. Supp. 3d at 1168, n.9 (granting summary judgment on claim that University improperly shifted burden of proof to plaintiff because this did not implicate due process concerns). Plaintiff similarly contends that individual defendants considered her "guilty before the disciplinary process was complete." ECF #104, ¶ 169. But her own Third Amended Complaint undermines this statement—the University notified Plaintiff that she was being investigated for *possible* violations of policy and that she would be "presumed not responsible for the alleged conduct at this time." *Id.*, ¶ 83. Plaintiff takes the ultimate finding of responsibility as proof that defendants presumed her guilty, but this is circular reasoning: Plaintiff points to no facts explaining how the University treated Plaintiff as guilty during the investigation or hearing, other than its conclusion that she was guilty. *Id.*, ¶¶ 169, 214.i. But "[d]issatisfaction with adverse academic or disciplinary decisions does not give rise to a legally cognizable harm." *Williams v. Penn. State Univ.*, 697 F. Supp. 3d 297, 308 (M.D. Pa. 2023); *see also Messeri*, 480 F. Supp. 3d at 1168 n.9 ("[T]he wrong result does not mean an individual's due process rights were violated because due process does not require that any particular result from university disciplinary proceedings.").

Plaintiff next alleges that she was denied a meaningful opportunity to be heard because the University either failed to collect, consider, or properly weigh evidence that allegedly would have supported Plaintiff. *E.g.*, ECF #104, ¶ 170-173, 175, 176-178, 180-181. "[T]he Due Process clause does not guarantee that parties to an adversarial proceeding may discover every piece of evidence they desire." *Tonkovich v. Kansas Bd. of Regents*, 159 F.3d 504, 520 (10th Cir. 1998). Moreover, procedural due process requires the opportunity to present a factual position—it does not guarantee oversight of the factfinder's ultimate evidentiary judgments. *See Bd. of Curators of Univ. of Missouri v. Horowitz*, 435 U.S. 78, 89 (1978).

Finally, Plaintiff alleges she was denied a meaningful opportunity to be heard because she allegedly did not have the opportunity to cross-examine certain witnesses. ECF # 104, ¶ 179. But the University did provide such an opportunity through the hearing itself and by providing an advisor to conduct such cross-examination. *Id*., ¶¶ 70-71. That witnesses did not appear does not render the hearing a due process violation. Moreover, her complaint belies the allegation that there was no cross-examination opportunity, as she did question the OIEC Investigator. *Id*., ¶ 105. As for other witnesses, Plaintiff does not allege how cross-examining Doe, Lance Carl, or "any of the witnesses interviewed by police" (ECF #104, ¶ 179) would have made a difference: the material facts were simply not disputed. Plaintiff and Doe agreed that they were arguing, Plaintiff picked up a knife during that argument, Doe was wounded with the knife, and Doe, with encouragement from the CU Football coaches, reported it to the police. *Id*., ¶¶ 28-33; 37. *See also Lee v. Univ. of New Mexico*, 500 F. Supp. 3d 1181, 1241–42 (D.N.M. 2020) (noting that denying the right to cross-examine a complainant "creates

little risk of erroneous deprivation" when the student has already admitted the conduct). Moreover, Plaintiff was undeniably given the opportunity to present her side of the story: she was permitted to submit written responses and her own evidence, but she did not (ECF #104, ¶¶ 65, 92-93); and, she appeared at the hearing with an advisor and was permitted to testify, which she chose not to do. *Id.*, ¶ 103.

At bottom, Plaintiff cannot now claim that she was denied an opportunity to be heard when she did not avail herself of the opportunity in the first place. *See Pittz v. Bd. of Educ. of U.S.D. 305, Salida, Kansas*, 869 F.2d 555, 557 ("By knowingly failing to take advantage of [offered] procedures, [plaintiff] has waived his right to challenge them in federal court.").

<u>Plaintiff does not plausibly allege that she was denied a fair, unbiased hearing.</u> ECF # 104, ¶¶ 182, 184-87. "Administrative decisionmakers are presumed to be impartial, and only evidence of actual bias or a likelihood of bias can support a due process claim." *Park v. Temple Univ.*, 757 F. App'x 102, 106 (3d Cir. 2018).

Plaintiff includes no allegations about how the hearing was biased against her, which she must do to raise an inference of bias. *See Doe v. Purdue Univ.*, 928 F.3d 652, 664 (7th Cir. 2019) ("To rebut the presumption that university administrators are honest and impartial, a plaintiff must lay a specific foundation of prejudice or prejudgment, such that the probability of actual bias is too high to be constitutionally tolerable."). Instead, Plaintiff recycles her allegations related to being denied a meaningful opportunity to be heard, to also argue that the University was biased because it made determinations with which Plaintiff disagrees or that were adverse to her. ECF # 104, ¶¶ 185-186. An adverse determination does not imply bias. *See*

*Parkhurst v. Shannon*, 172 F.4th 1176, 1187 (10th Cir. 2026) (finding that hearing officer was not biased for refusing Plaintiff's requests to present evidence because "an adverse ruling doesn't imply bias"); *Bixler v. Foster*, 596 F.3d 752, 762 (10th Cir. 2010) (reasoning that adverse judicial decision alone does not evidence actual or appearance of bias). At most, Plaintiff contends that because a lawyer from the office of University Counsel appeared with the OIEC investigator, the hearing was not fair. ECF # 104, ¶ 184. But again, she does not identify any questions that she would have asked the OIEC investigator which were precluded or any facts supporting that this appearance contributed to an impartial hearing. *Id*. Her vague assertion that University Counsel "stifled" some questioning does not state a claim. *See Doe v. Mich. State Univ*., 989 F.3d 418, 427 (6th Cir. 2021) ("The issue is . . . whether permitting the complainants to refuse to answer some small number of questions throughout the course of a three-day hearing is a violation of Doe's due process rights. It is not.").

At bottom, Plaintiff received an extensive and robust process; she simply disagrees with the outcome. This does not allege that the University deprived her of a protected interest without constitutionally sufficient procedures, and her official-capacity § 1983 claim must be dismissed.

## III. Even if timely, Plaintiff fails to state a claim under Title IX.

Title IX of the Education Amendments of 1972 provides that "[n]o person in the United States shall, on the basis of sex, be excluded from participation in, be denied the benefits of, or be subjected to discrimination under any education program or activity receiving Federal financial assistance." 20 U.S.C. § 1681(a). To survive dismissal of her Title IX claim, Plaintiff must allege facts that "raise a plausible inference" that "sex was a motivating factor" in the University's disciplinary decision to expel her. *Doe v. Univ. of*

*Denver*, 1 F.4th 822, 830 (10th Cir. 2021) (citing *Doe v. Purdue Univ.*, 928 F.3d 652, 667 (7th Cir. 2019)). She has not.

Plaintiff alleges that the University violated Title IX because alleged procedural flaws in the investigation and sanction "indicate the presence of discrimination" based on sex—yet her allegations are entirely conclusory and largely restate her procedural due process allegations. ECF # 104, ¶ 214.i – xxiv. She suggests that the University engaged in "selective enforcement" by deciding to initiate the investigation against Plaintiff in the first place. *Id.*, ¶ 221. But she offers no facts to support that the University initiated this investigation because of her sex—instead, the Third Amended Complaint establishes that the University initiated this investigation, pursuant to its jurisdiction, policies, and procedures, in response to an incident report. *Id.*, ¶¶ 38-40, 56. At most, the complaint suggests that the University initiated the investigation given Doe's status as a football player—not because of Plaintiff's sex. *Id.*, ¶¶ 37, 42, 43, 56, 134, 214, 217, 224.

She also offers no facts suggesting that the University sanctioned her with expulsion because of her sex. Instead, expulsion is a permissible sanction upon a finding of responsibility under the OIEC Resolution Procedures. *Id.*, ¶ 77. The statistics to which Plaintiff points do nothing to establish that the University investigated and sanctioned her based on sex. *Id.*, ¶ 80-81. Plaintiff's purported comparator—a white male football player who pleaded guilty to assault yet was not expelled—also fails to establish a plausible influence that sex was a motivating factor in Plaintiff's expulsion. *Id.*, ¶ 224. Plaintiff hasn't pointed to sufficient, plausible facts to allege that the University's investigation and disciplinary process concerning the male comparator was

similarly situated to her. Without such facts, it's not clear whether, like Plaintiff, this individual underwent a completed investigation, was found responsible for violating University policy, and then received a sanction (allegedly suspension) or was temporarily suspended pending such investigation and left the University before such could be completed. It could easily be the latter, as Plaintiff alleges that this individual was suspended and "transfer[red] to a new school." *Id.*, ¶ 224 n. 15. Consequently, Plaintiff's inapt use of this "comparator" does not raise any inference, let alone a plausible one, that the University was motivated by sex in investigating and expelling Plaintiff. *See Doe v. Samford Univ.*, 29 F.4th 675, 693 (11th Cir. 2022) (affirming Rule 12(b)(6) dismissal of Title IX claim where student failed to allege "'an inconsistency' between his treatment by the university and the university's treatment of a similarly situated member of the other sex").

Plaintiff next suggests that sex discrimination motivated the "erroneous outcome" in her case because she stabbed Doe on accident. ECF #104, ¶ 222. Even assuming the University erroneously found that Plaintiff intentionally stabbed Doe, this at most suggests a flawed process—not that the finding was motivated by Plaintiff's sex. *See French v. Denver Pub. Sch.*, No. 23-CV-01614-NYW-MDB, 2024 WL 3276159, at *16-*17 (D. Colo. July 2, 2024) (dismissing Title IX claim; although plaintiff alleged "a clearly irregular investigative and adjudicative [Title IX] process," he failed to allege "any circumstances to suggest that this bias was sex-based").

## IV. Even if timely, Plaintiff fails to state a claim under Title VI.

Title VI prohibits discrimination based on race, color, or national origin in programs that receive federal funding. 42 U.S.C. § 2000d. To state a prima facie case of Title VI discrimination, Plaintiff must allege (1) that she is a member of a protected

class; (2) she suffered an adverse action; and (3) similarly situated comparators were treated differently. *Jemaneh v. Univ. of Wyoming*, 82 F. Supp. 32 1281, 1302-03 (D. Colo), *aff'd*, 622 F. App'x 765 (10th Cir. 2015). To survive dismissal, Plaintiff must plausibly allege that any discrimination was intentional. *Id.* at 1298 (citing *Alexander v. Sandoval*, 532 U.S. 275, 281 (2001)). Again, Plaintiff fails to state a claim.

Plaintiff has not plausibly alleged that any similarly situated students of a different race were treated differently than her. She points to the same "white male" individual as she did in her Title IX claim, alleging that he was suspended rather than expelled like her (ECF #104, ¶¶ 224, 242), but as discussed above, there are no facts suggesting that Plaintiff and this individual were similarly situated. *See supra* pp. 13-14. She also alleges that "similarly situated white students at CU Boulder do not receive the harsh and unnecessary sanction of expulsion"; however, this conclusory statement is insufficient to state a Title VI claim. *Id.*, ¶ 250; *see Pourya Shahmaleki v. Kansas State Univ.*, No. 15-7766-JAR, 2016 WL 3522040, at *3 (D. Kan. June 28, 2016) (dismissing Title VI claim where plaintiff alleged that similarly situated "American Caucasian students with [similar] academic issues" to plaintiff were resolved under a different policy; there were no allegations indicating such students "were subject to similar standards of discipline, supervised by common professors or academic departments, or faced [similar] charges"); *Buhendwa v. Reg'l Transp. Dist.*, No. 12-CV-01711-PAB-CBS, 2013 WL 1222307, at *6 (D. Colo. Mar. 22, 2013), *aff'd*, 553 F. App'x 768 (10th Cir. 2014) (dismissing Title VI claim where plaintiff failed to alleged apt comparators; although plaintiff alleged that defendant compensated white individuals for their injuries

but not plaintiff, white comparators were pedestrians or motorists "struck by buses" whereas plaintiff sustained her injuries "when she fell inside a moving bus").

Plaintiff has pointed to an alleged University statistical report, claiming that it shows that "similarly situated cases concerning allegations of dating or domestic violence" are rarely addressed through the formal grievance process applied to Plaintiff's case, and rarely result in expulsion. ECF #104, ¶¶ 245-50. She admits the report contains no information on the allegedly similarly situated students' races, claiming that she needs discovery to learn these facts. *Id.*, ¶ 250 n.14. And, Plaintiff does not allege specific facts that these other student cases were similar to hers (for example, facts showing they involved similar weapons and injuries, or similar criminal charges, as in Plaintiff's case). *Id.*, ¶¶ 245-250. Instead, she declares them similar because they broadly concern "allegations of dating or domestic violence." *Id.*, ¶ 246. Because Plaintiff has not plausibly alleged the cases are similar, any future information on the students' races is inconsequential. Moreover, without allegations suggesting intentional race-based discrimination—such as allegations that a relevant University employee "refer[red] to, or comment[ed]" on her race, which are absent here—such claim is not actionable under Title VI. *Jemaneh*, 82 F. Supp. 3d at 1298 (dismissing Title VI claim where there were "insufficient specific, nonconclusory factual allegations to support the inference that Plaintiff's grades were the product of intentional discrimination" against him as an Ethiopian American).

Thus, Plaintiff has not stated a prima facie case of discrimination, much less that any such discrimination was intentional as is required to state a Title VI claim.

## V. Plaintiff's state-law claims must be dismissed because the University is immune under the Eleventh Amendment.

Finally, the University is immune to Plaintiff's claims for breach of contract, estoppel and reliance, and violation of the state constitution under the Eleventh Amendment. ECF #104, ¶¶ 256-295. *Doe v. Univ. of Colo., Boulder through Bd. of Regents of Univ. of Colo.*, 255 F. Supp. 3d 1064, 1086-87 (D. Colo. 2017) (dismissing all state-law claims against University for lack of subject-matter jurisdiction where University did not waive sovereign immunity); *Norris v. Univ. of Colo., Boulder*, 362 F. Supp. 3d 1001, 1021 (D. Colo. 2019) ("[A]bsent a state's consent, the Eleventh Amendment prohibits a federal court from adjudicating state-law claims against a state."). The University has not waived sovereign immunity. Accordingly, the Court must dismiss Count IV, ECF #104, ¶¶ 256-276; Count V, *id.*, ¶¶ 277-283; and Count VI, *id.*, ¶¶ 284-295.

## CONCLUSION

At bottom, Plaintiff's Third Amended Complaint simply recounts her disagreement with the University's investigative process and its decision that she violated University policy and should be expelled. But such disagreement with a disciplinary decision does not state a due process claim, plausibly allege that sex or race was a motivating factor in that decision, or permit state law claims against the University. And it is untimely in any event. Thus, the University respectfully requests that the Court dismiss all claims against it.

**DATED:** August 21, 2026

Respectfully submitted:

*s/ Megan H. Clark*

Megan H. Clark
Senior Assistant University Counsel
Special Assistant Attorney General
Office of University Counsel
1800 Grant Street, Suite 700
Denver, CO 80203
303-860-5691
Megan.Clark@cu.edu

*Attorney for Defendant*

**CERTIFICATE OF SERVICE**

I hereby certify that on August 21, 2026, I electronically filed the foregoing with the Court's electronic filing system (CM/ECF) which will automatically cause notification to be sent to the following counsel of record:

Jason William Savela
The Savela Law Firm PC
3825 Iris Avenue, Suite 100
Boulder, CO 80301
720-821-1001
jason@savelaw.net

*Attorney for Plaintiff*

*s/ Pamela K. Morrison*
Pamela K. Morrison, Litigation Paralegal