**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO**

Civil Action No. 1:24-cv-02576-GPG-TPO

LOULILLIAN WATSON,

Plaintiff,

v.

UNIVERSITY OF COLORADO BOULDER; THE BOARD OF REGENTS FOR UNIVERSITY OF COLORADO, BOULDER;
JUSTIN SCHWARTZ, as agent for University of Colorado, Boulder;
KATE BAUER, as agent for University of Colorado, Boulder;
ANN GUSHURST, individually and as agent for University of Colorado, Boulder;
LLEN POMEROY, individually and as agent for University of Colorado, Boulder;
REGINA TIRELLA, individually and as agent for University of Colorado, Boulder,

Defendants.

---

**DEFENDANTS LLEN POMEROY, REGINA TIRELLA, AND ANN GUSHURST'S MOTION TO DISMISS ECF #104 PER F.R.C.P. 12(b)(6)**

---

Individual Defendants—Llen Pomeroy, Regina Tirella, and Ann Gushurst[1]—under F.R.C.P. 12(b)(6), move to dismiss Plaintiff Loulillian Watson's Third Amended Complaint (ECF #104) based on untimeliness, absolute and qualified immunity, and failure to state a claim.

**Conferral:** Undersigned counsel conferred with counsel for Plaintiff regarding this motion; Plaintiff opposes.

## BACKGROUND

Plaintiff was an undergraduate student at the University of Colorado Boulder. ECF #104, ¶ 23. In mid-2021, she began dating another student, John Doe, a member

[1] Defendant Kate Bauer was sued only in her official capacity and has been dismissed by stipulation of the parties. (ECF #105.)

of the CU Football team. *Id.*, ¶¶ 22-24. On February 2, 2022, Plaintiff and Doe got into an argument, during which Plaintiff picked up a kitchen knife and stabbed Doe in the side. *Id.*, ¶¶ 26-28. Doe went to the hospital, where he required surgery because the knife had "cut . . . an internal organ"; he stayed in the hospital overnight. *Id.*, ¶¶ 29-33.

Doe told his football coaches that he was in the hospital. *Id.*, ¶¶ 32-33. After his release, his coaches learned that he had been in the hospital recovering from a knife wound inflicted by Plaintiff. *Id.*, ¶ 33. Because this incident implicated the University's prohibition on dating violence, and because CU Football coaching staff are mandatory reporters, one of Doe's coaches reported the incident to the University's Office of Institutional Equity and Compliance ("OIEC"). *Id.*, ¶ 40. The coaches also appropriately encouraged Doe to report the incident to the Boulder police; he did so in a phone call. *Id.*, ¶¶ 37-39.

Boulder police arrested Plaintiff, and she was ultimately charged with First Degree Assault, Felony Menacing, and Obstruction of Telephone Service, all with a domestic violence enhancer; she accepted a deferred sentence. *Id.*, ¶ 47; p. 19, n. 7.

Meanwhile, the OIEC opened an investigation into whether the incident violated University policy. *Id.*, ¶ 82. Plaintiff received a Notice of Allegations and Interim Suspension, which "informed [her] that she was being investigated for possible violations of CU Boulder's Sexual Misconduct, Intimate Partner Violence, and Stalking Policy, specifically Dating Violence." *Id.*, ¶ 83. The OIEC interviewed seven witnesses and reached out to two others, who did not respond. *Id.*, ¶ 88. Plaintiff did not participate in an interview (*id.*, ¶ 87); did not provide "any information or documentation to the OIEC" (*id.*, ¶ 91); and did not provide a response to either the preliminary investigative

report or the final investigative report (*id*., ¶¶ 92-93). On June 17, 2022, the University held a live hearing before a Hearing Officer (Defendant Gushurst). *Id*., ¶ 102. Plaintiff appeared, represented by an advisor; Doe did not appear, but his advisor did. *Id*., ¶ 103. Neither party testified. *Id*. Afterward, the Hearing Officer concluded in a written determination that Plaintiff was responsible for violating the OIEC policy. *Id*., ¶ 107. Plaintiff filed an appeal, which was denied. *Id*., ¶¶ 132, 138. She was expelled from the University. *Id*., ¶ 131.

## LEGAL STANDARD

A motion to dismiss under Fed. R. Civ. P. 12(b)(6) "tests the sufficiency of the allegations within the four corners of the complaint after taking those allegations as true." *Mobley v. McCormick*, 40 F.3d 337, 340 (10th Cir. 1994). To withstand such a motion, a complaint must contain enough allegations of fact to nudge the plaintiff's claims across the line from conceivable to plausible. *Khalik v. United Air Lines*, 671 F.3d 1188, 1190 (10th Cir. 2012). "[M]ere 'labels and conclusions' and 'a formulaic recitation of the elements of a cause of action' will not suffice." *Id.* at 1191 (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)).

## ARGUMENT

Plaintiff brings a § 1983 claim against Defendants Pomeroy, Tirella, and Gushurst in their individual capacities, alleging a violation of her constitutional right to due process of law. ECF #104, Count I, ¶¶ 145-199. First, the claim is untimely. Second, Defendant Gushurst is entitled to absolute immunity, as a hearing officer acting in quasi-judicial capacity. Third, all Defendants are entitled to qualified immunity. Finally, Plaintiff has failed to set forth sufficient factual allegations to support her claim against these individuals.

## I. Plaintiff's § 1983 claim is untimely because it is not brought within two years from the accrual of the cause of action.

"[I]t is appropriate to resolve a statute of limitations defense on a Rule 12(b)(6) motion when the dates given in the complaint make clear that the right sued upon has been extinguished." *Wei v. Univ. of Wyoming Coll. of Health Sch. Pharmacy*, 759 F. App'x 735, 740 (10th Cir. 2019). In Colorado, the statute of limitations for a § 1983 action is two years from the time the cause of action accrued. *Fogle v. Pierson*, 435 F.3d 1252, 1258 (10th Cir. 2006); *see also* C.R.S. § 13-80-102(1)(g)(i). Claims accrue when Plaintiff knew or should have known that her rights had been violated. *Nicholas v. Boyd*, 317 F. App'x 773, 778 (10th Cir. 2009). A plaintiff "need not have conclusive evidence of the cause of an injury in order to trigger the statute of limitations." *Alexander v. Okla.*, 382 F.3d 1206, 1216 (10th Cir. 2004). Rather, claims accrue when "the plaintiff can file suit and obtain relief." *Varnell v. Dora Consol. Sch. Dist.*, 756 F.3d 1208, 1213 (10th Cir. 2014). The test is an objective one, with the focus "on whether the plaintiff knew of facts that would put a reasonable person on notice that wrongful conduct caused the harm." *Nicholas*, 317 F. App'x at 778.

Plaintiff filed her lawsuit on September 19, 2024. *See* ECF #3. Consequently, her cause of action must have accrued on or after September 19, 2022, or it is untimely.

***Llen Pomeroy***: Plaintiff received the formal Complaint filed and signed by Defendant Pomeroy on February 9, 2022. ECF #104, ¶ 82. The final investigatory report was issued April 28, 2022, and the hearing took place on June 17, 2022. *Id.*, ¶¶ 82, 93, 102. Plaintiff has not made any allegations involving Defendant Pomeroy dated after June 17, 2022. Thus, all instances of Defendant Pomeroy's alleged involvement

occurred before September 19, 2022, and the § 1983 claim against her is barred by the statute of limitations.

***Regina Tirella***: Plaintiff challenges Defendant Tirella's issuance of an interim suspension on February 8, 2022 and sending her a sanction letter, informing Plaintiff that she had been expelled by the Sanctioning Board, on August 4, 2022. *Id.*, ¶¶ 84, 127. There are no allegations dated after August 4, 2022 that involve Defendant Tirella. Thus, Defendant Tirella's only alleged involvement occurred before September 19, 2022, and the § 1983 claim against her is therefore barred by the statute of limitations.

***Ann Gushurst***: Plaintiff alleges that Defendant Gushurst was the Hearing Officer assigned to preside over her case. *Id.*, ¶¶ 5, 13. In this role, Defendant Gushurst conducted a pre-hearing conference on June 14, 2022 and a hearing on June 17, 2022. *Id.*, ¶¶ 101-102. She also signed the Written Determination Regarding Responsibility dated July 22, 2022. *Id.*, ¶ 107. Plaintiff has not alleged any events involving Defendant Gushurst after July 22, 2022. Accordingly, the claim against her is time-barred.

## II. Defendant Gushurst is entitled to absolute immunity.

Given her quasi-judicial role as a hearing officer, Defendant Gushurst is entitled to absolute immunity for any actions she took in that capacity. ECF #104, ¶ 5. "Absolute immunity bars suits for money damages for acts made in the exercise of . . . judicial discretion." *Guttman v. Khalsa*, 446 F.3d 1027, 1033 (10th Cir. 2006). "Judicial immunity is not limited to appointed or elected judges but includes those performing roles functionally comparable to judges, such as hearing examiners and administrative law judges." *Moore v. Gunnison Valley Hosp.*, 170 F. Supp. 2d 1080, 1083 (D. Colo. 2001), *aff'd*, 310 F.3d 1315 (10th Cir. 2002). The Tenth Circuit has established that "an accusation of [bias] does not trump a claim of absolute immunity." *Guttman v. Khalsa*,

446 F.3d 1027, 1033–34 (10th Cir. 2006). Likewise, "[j]udicial immunity is not overcome by allegations of bad faith or malice." *Id.* (citing *Mireles v. Waco,* 502 U.S. 9, 12 (1991)). "Only accusations that a judge was not acting in his judicial capacity or that he acted in the complete absence of all jurisdiction can overcome absolute immunity." *Id.*

As such, for an official, like a hearing officer, to be protected by absolute immunity: "(a) the officials' functions must be similar to those involved in the judicial process, (b) the officials' actions must be likely to result in damages lawsuits by disappointed parties, and (c) there must exist sufficient safeguards in the regulatory framework to control unconstitutional conduct." *Id.* at 1033 (citing *Horwitz v. State Bd. of Med. Examiners*, 822 F.2d 1508, 1513 (10th Cir. 1987)).

Here, each prong of this test is met.

**A. Gushurst's functions are similar to those involved in the judicial process.**

As a university hearing officer, Defendant Gushurst's functions are similar to those involved in the judicial process. For example, in *Saavedra v. City of Albuquerque*, the Tenth Circuit held that a municipal hearing officer was entitled to absolute judicial immunity for a § 1983 claim challenging his recommendation that a public employee be terminated. 73 F.3d 1525, 1529-30 (10th Cir. 1996). Regarding the first prong, the court reasoned that the hearing officer's functions were similar to those involved in the judicial process because the hearing was adversarial in nature, parties had the right to counsel and the opportunity to present evidence, provide testimony, and cross-examine witnesses. *Id.* at 1530. There, the hearing officer's decision was also subject to a limited appeal by a Board which could either affirm, deny, modify, or remand the decision—similar to judicial review. *Id.*

Here, like the municipal hearing officer in *Saavedra*, Defendant Gushurst engaged in functions similar to a judge: she oversaw the adversarial process where parties had the right to counsel, the opportunity to present evidence, provide testimony, and to question witnesses. ECF #104, ¶¶ 67-79. As the Third Amended Complaint acknowledges, Defendant Gushurst, as the hearing officer, was responsible for presiding over and managing a hearing as a judge would, including: maintaining order; determining whether questions to witnesses were relevant; determining witness credibility; considering whether a party had met its burden of proof; applying an evidentiary standard when making findings of fact and conclusions of law; and, issuing a written determination regarding responsibility with a sanction. *Id.* Her written determination, dated July 22, 2022, was challenged by an appeal to the Appeal Board, which in turn upheld her decision. *Id.*, ¶¶ 77, 107-126, 132, 138. Defendant Gushurst's role and procedure here are almost identical to that of the immune defendant in *Saavedra*. As such, the first prong of absolute immunity is met, because Defendant Gushurst's function was sufficiently similar to that of a judge.

### B. Gushurst's actions are likely to result in a damages lawsuit by disappointed parties.

The Supreme Court has recognized that absolute immunity is "necessary to assure that judges, advocates, and witnesses can perform their respective functions without harassment or intimidation." *Butz v. Economou*, 438 U.S. 478, 512 (1978). This is especially true for judges because "controversies sufficiently intense to erupt in litigation are not easily capped by a judicial decree. The loser in one forum will frequently seek another, charging the participants in the first with unconstitutional animus." *Id.* Here, Plaintiff's allegations against Defendant Gushurst prove why absolute

immunity is necessary. A hearing to determine whether a student violated policy and should be expelled from the university epitomizes the type of action that is likely to result in lawsuits for damages. *See Saavedra*, 73 F.3d at 1530 ("The nature of the process is such that the terminated employee will often have a strong incentive to sue the [hearing officer] . . . and therefore a strong likelihood of lawsuits could deter others from desiring to perform these functions . . ."). Indeed, here, Plaintiff is seeking compensatory and punitive damages against Defendant Gushurst in her individual capacity. *See* ECF #104, ¶¶ 194, 196, 199. Because Defendant Gushurst's actions in this hearing, which led to Plaintiff's expulsion, were likely to result—and did result—in a damages lawsuit by the disappointed party, the second prong of absolute immunity is satisfied.

### C. The OIEC process has sufficient safeguards to control unconstitutional conduct.

Finally, the third prong of the absolute immunity analysis is satisfied because the OIEC process has sufficient safeguards to control against unconstitutional conduct. For one, per OIEC procedure, a respondent has the right to appeal the hearing officer's decision to a different decision maker. *Id.*, ¶ 79. Plaintiff exercised this right on August 24, 2022, when she submitted her appeal per the OIEC process. *Id.*, ¶ 132. The Appeal Board upheld Defendant Gushurst's written determination and sanctions in their entirety after a complete appeals process. *Id.*, ¶¶ 132-138. Additionally, the OIEC process must be conducted by "trained officials who do not have a conflict of interest or bias for or against the complainant or respondent, or against complainants or respondents generally." *Id.*, ¶ 59. Similarly, OIEC procedures "mandate an investigative process," provide for the appointment of an advisor for a respondent, and entitle parties

to review the evidence and findings. *Id.*, ¶¶ 62-63, 65-66, 69-70, 75; *see Butz*, 438 U.S. at 513 (adequate safeguards include parties entitled to know the findings and conclusions on issues of fact, law or discretion presented on the record). Because adequate safeguards exist within OIEC procedures, this third prong is satisfied.

Therefore, Defendant Gushurst is entitled to absolute immunity against Plaintiff's §1983 claims.

## III. Qualified immunity bars the claims against all individual Defendants.

"Qualified immunity shields public officials from "undue interference with their duties and from potentially disabling threats of liability.'" *Wilkins v. DeReyes*, 528 F.3d 790, 796 (10th Cir. 2008) (citation omitted). "A government official is entitled to qualified immunity in all but the most exceptional cases." *Erker v. Schmeeckle*, No. 21-CV-02012-KLM, 2022 WL 2966858, at *6 (D. Colo. July 27, 2022) (internal citation and quotation omitted).

A plaintiff must plead facts that plausibly show (1) the defendant's actions violated a constitutional or statutory right, and (2) that this right was clearly established at the time. *Pierce v. Gilchrist*, 359 F.3d 1279, 1284 (10th Cir. 2004). Plaintiff must satisfy both prongs, and the district court may "decide which of the two prongs of qualified-immunity analysis to tackle first." *Ashcroft v. al-Kidd*, 563 U.S. 731, 735 (2011). "Failure to satisfy either of these inquiries will result in dismissal in favor of the defendant." *Pierce*, 359 F.3d at 1284.

As to the first prong, "[b]ecause a plaintiff can neither recover under § 1983 from a government official nor overcome the official's assertion of qualified immunity without demonstrating that official violated his constitutional or statutory rights, the legal

analysis required to surmount these separate obstacles is often related, if not identical." *Dodds*, 614 F.3d at 1193–94.

As to the second, "[f]or the law to be 'clearly established,' there ordinarily must be a Supreme Court or Tenth Circuit opinion on point, or the clearly established weight of authority from other circuits must point in one direction." *Pompeo v. Bd. of Regents of the Univ. of N. M.*, 852 F.3d 973, 981 (10th Cir. 2017). Every "reasonable official would have understood that what he is doing violates that right" and "existing precedent [has] placed the statutory or constitutional question beyond debate." *al-Kidd*, 563 U.S. at 741 (citation and internal alterations omitted).

While "the right to due process of law is quite clearly established by the Due Process Clause," not every due process violation involves a clearly established right. *Anderson v. Creighton,* 483 U.S. 635, 639–40 (1987). A plaintiff must show that "the desired process was clearly established given the particular facts." *Columbian Fin. Corp. v. Stork*, 811 F.3d 390, 396 (10th Cir. 2016). "Given the inherently flexible nature of due process, it is all the more important that a § 1983 plaintiff alleging violations of procedural due process demonstrate . . . that it was clearly established that the specific procedural safeguard at issue was due to the plaintiff." *Flor v. Bd. of Regents of Univ. of N. M.*, 539 F. Supp. 3d 1176, 1195 (D.N.M. 2021) (internal citation omitted). Especially in the student disciplinary context, "[p]roving that the law was clearly established is a high burden for a plaintiff." *Lee v. Univ. of N. M.*, 449 F. Supp. 3d 1071, 1135 (D.N.M. 2020). Overall, qualified immunity protects "all but the plainly incompetent or those who knowingly violate the law." *Yeasin v. Durham*, 719 F. App'x 844, 849 (10th Cir. 2018) (quoting *Mullenix v. Luna*, 577 U.S. 7, 12 (2015).

### A. The allegations against each individual Defendant do not support a claim of due process violation.

Personal liability "under § 1983 must be based on personal involvement in the alleged constitutional violation." *Foote v. Spiegel*, 118 F.3d 1416, 1423 (10th Cir. 1997). Alternatively, a plaintiff may "impose liability upon a defendant-supervisor who creates, promulgates, implements, or in some other way possesses responsibility for the continued operation of a policy the enforcement . . . of which subjects, or causes to be subjected that plaintiff to the deprivation of any rights secured by the Constitution." *Dodds v. Richardson*, 614 F.3d 1185, 1199 (10th Cir. 2010) (internal citation and alteration omitted).

Importantly, there is no vicarious liability under § 1983, and "supervisory liability" should not be misunderstood to imply it. *Schneider v. City of Grand Junction Police Dep't*, 717 F.3d 760, 767 (10th Cir. 2013) ("Section 1983 does not authorize liability under a theory of respondeat superior. . . . Absent vicarious liability, each Government official, his or her title notwithstanding, is only liable for his or her own misconduct."). To succeed on a theory of "supervisory liability," a plaintiff must allege that each individual defendant had the requisite "(1) personal involvement; (2) causation, and (3) state of mind" to link the individual defendant's actions to plaintiff's alleged constitutional violation. *Id*. (quoting *Dodds*, 614 F.3d at 1195).

***Llen Pomeroy***: Plaintiff's allegations about Defendant Pomeroy do not sustain a claim. She contends that Defendant Pomeroy did not follow established procedures—by drafting an "unfair" investigative report, failing to dismiss the case due to lack of evidence, improperly putting the burden of proof on Plaintiff, and making improper evidentiary determinations. ECF #104, ¶¶ 94-99, 169, 171-174, 177. These allegations

do not establish a due process violation. *See Tonkovich v. Kansas Bd. of Regents*, 159 F.3d 504, 522 (10th Cir. 1998) ("We note that a university's failure to follow its established guidelines in overseeing a grievance 'does not in and of itself implicate constitutional due process concerns'") (quoting *Purisch v. Tenn. Tech. Univ.*, 76 F.3d 1414, 1423 (6th Cir. 1996)); *Messeri v. DiStefano*, 480 F. Supp. 3d 1157, 1168 n.9 (D. Colo. 2020) ("improperly shift[ing] the burden to Plaintiff . . . does not implicate due process concerns here"). Indeed, even if true, "failure to adhere to certain evidentiary rules" does not detract from the fact that Plaintiff received (1); notice; (2) an opportunity to be heard by an impartial tribunal;[2] and (3) even a post-suspension right to appeal. *See Tonkovich*, 159 F.3d at 522. This is all that due process requires. *Id.*

Regarding Plaintiff's claim that Defendant Pomeroy was biased against her, Plaintiff offers nothing to support this contention. "Administrative decisionmakers are presumed to be impartial, and only evidence of actual bias or a likelihood of bias can support a due process claim." *Park v. Temple Univ.*, 757 F. App'x 102, 106 (3d Cir. 2018). Plaintiff does not even raise an inference of bias, as she includes no allegations about how Defendant Pomeroy was biased against her. *See Doe v. Purdue Univ.*, 928 F.3d 652, 664 (7th Cir. 2019) ("To rebut the presumption that university administrators are honest and impartial, a plaintiff must lay a specific foundation of prejudice or prejudgment, such that the probability of actual bias is too high to be constitutionally tolerable.").

---

[2] Plaintiff admits she was provided a hearing where she had the right to testify yet chose not to do so. ECF #104, ¶ 103. In light of that admission, Plaintiff's conclusory allegations that she was denied the opportunity to be heard, (*id.* ¶¶ 168-181), are not plausible and should be disregarded.

***Regina Tirella***: Plaintiff's claims against Defendant Tirella merely amount to disagreement with Defendant Tirella's conclusions in the Sanction Letter—and this is not enough to establish a due process claim. *See Messeri*, 480 F. Supp. 3d at 1168 n.9 (even "the wrong result does not mean an individual's due process rights were violated because due process does not require any particular result from university disciplinary proceedings"). And, as with the claims against Defendant Pomeroy, Plaintiff's claim that Defendant Tirella made incorrect evidentiary determinations, such as refusing to consider lack of intent, misinterpreting or ignoring Plaintiff's statements, and misapplying sanctioning factors, do not establish a due process violation. *Tonkovich*, 159 F.3d at 521 (finding no due process violation where findings and conclusions did not address "every possible fact in its resolution of the case"). And again, similar to Defendant Pomeroy, Plaintiff provides no support for the bare assertion that Defendant Tirella was biased against her; accordingly, she cannot overcome the presumption of impartiality. *See Purdue Univ.*, 928 F.3d at 664.

***Ann Gushurst***: With respect to her claims against Defendant Gushurst, Plaintiff once again merely conveys her disagreement with the weight Defendant Gushurst placed on the evidence and with the decision she reached. Disagreement with the decision is not a due process claim, because "due process does not require . . . any particular result from university disciplinary proceedings." *Messeri*, 480 F. Supp. 3d at 1168 n.9; *see also Doe v. Univ. of Arkansas - Fayetteville*, 974 F.3d 858, 868 (8th Cir. 2020) ("Doe . . . alleges that the panel left out 'important points' from his proposed questions and did not ask 'pertinent follow up questions,' but he identifies no specific question that was refused. Conclusory allegations are insufficient. Without a stronger

allegation that the panel failed to pursue particular inquiries that were material to the truth-finding process, Doe has failed to state a claim."). At bottom, "[d]issatisfaction with adverse academic or disciplinary decisions does not give rise to a legally cognizable harm." *Williams v. Penn. State Univ.*, 697 F. Supp. 3d 297, 308 (M.D. Pa. 2023). Plaintiff's constitutional rights do not extend to a right to have the hearing officer agree with her—which is all her allegations boil down to.

Regarding the claims that Defendant Gushurst exhibited bias, Plaintiff's allegations do not establish a procedural due process violation. At most, she contends that because a lawyer from the office of University Counsel appeared with the OIEC investigator, the hearing was biased. ECF # 104, ¶ 184. However, she does not identify any questions that she would have asked the OIEC investigator that were precluded by the attendance of the lawyer or any facts supporting that this appearance contributed to a biased hearing. *Id.* The bias claim represents a repackaged disagreement with the ultimate decision reached here. But an adverse decision, without more, does not imply bias. *See Parkhurst v. Shannon*, 172 F.4th 1176, 1187 (10th Cir. 2026) (finding that hearing officer was not biased for refusing Plaintiff's requests to present evidence because "an adverse ruling doesn't imply bias"); *Bixler v. Foster*, 596 F.3d 752, 762 (10th Cir. 2010) (reasoning that adverse judicial decision alone does not evidence actual or appearance of bias).

Because Plaintiff has not alleged facts to plausibly support a claim of violation of due process by any of the individual Defendants, they are entitled to qualified immunity under the first prong of the qualified immunity analysis.

### B. Plaintiff has not alleged a clearly established specific procedural safeguard that any individual Defendant violated in this case.

As discussed above, Plaintiff's allegations of violation of due process amount to nothing more than disagreement with the findings of the investigation and the hearing officer's decision. But there is no clearly established right to a specific outcome in a proceeding that implicates a protected interest. *See Butler v. Rector & Bd. of Visitors of Coll. of William & Mary*, 121 F. App'x 515, 520 (4th Cir. 2005) (even an erroneous decision does not violate due process, if the plaintiff was provided adequate notice and an opportunity to be heard); *Messeri*, 480 F. Supp. 3d at 1168 n.9 (same).

## IV. Plaintiff's § 1983 claim against the individual Defendants must be dismissed for failure to state a claim.

Alternatively, for the same reasons set forth *supra* in Part III.i, Plaintiff's claim against the individual Defendants should be dismissed under F.R.C.P. 12(b)(6).

In conclusion, Defendants respectfully request that the Court dismiss Plaintiff's § 1983 claims against Defendants Pomeroy, Tirella, and Gushurst in their individual capacities with prejudice and grant such other relief as the Court deems just.

**DATED:** August 21, 2026

Respectfully submitted:

*s/ Megan H. Clark*
Megan H. Clark
Senior Assistant University Counsel
Special Assistant Attorney General
1800 Grant Street, Suite 700
Denver, CO 80203
303-860-5691
Megan.Clark@cu.edu

*Attorney for Defendant*

**CERTIFICATE OF SERVICE**

I hereby certify that on August 21, 2026, I electronically filed the foregoing with the Court's electronic filing system (CM/ECF) which will automatically cause notification to be sent to the following counsel of record:

Jason William Savela
The Savela Law Firm PC
3825 Iris Avenue, Suite 100
Boulder, CO 80301
720-821-1001
jason@savelaw.net
*Attorney for Plaintiff*

*s/ Pamela K. Morrison*
Pamela K. Morrison, Litigation Paralegal